of the Criminal Justice Act and appreciates your willingness to accept the assignment, you may proceed. Thank you, Your Honor. May it please the Court, opposing counsel, Ms. Arias was convicted of conspiracy to distribute methamphetamine, over 500 grams, after an investigation into the conspiracy that started with her daughter, Karen Camacho. Now, the postal inspector noticed that there were odd packages coming to the house. And so, upon seeing these odd packages, looked into it further to see what was going on. They did a drop of the package at the house to see who picked it up. Nobody picked it up. And eventually, that led to them doing an interview with Ms. Arias. Now, there was never any evidence presented at the trial that was an eyewitness of Ms. Arias participating in the conspiracy, of her dealing drugs, of her making purchases for drugs. They found that there was some — that someone had used Ms. Arias' I.D. in order to make some wire transfers. They found that Ms. Arias had received the packages. And Ms. Arias did give a confession to the postal inspector. But none of that evidence ever revealed what Ms. Arias knew and when she knew it. So all of the evidence that Ms. Arias had given while she's giving her interview, she's explaining that she, yes, she helped out her daughter, Karen, who she lives with, and that she went and made wire transfers on her behalf. She says that they received packages. But then she says that at one point in time, she told Karen, I don't think that you should be taking these packages, and that she did learn that they were doing this. Now, Ms. Arias did not speak English. She was actually using an interpreter throughout the entirety of the trial. But this interview was conducted in English. But she gives this explanation of what was happening. But there's never any actual evidence that shows what she knew when, like that she knew both that she was participating in the conspiracy and that she knew that there was a drug conspiracy. These packages were being delivered to her home. The postal inspector started to give evidence that they're — that in some cases, these drugs were sent to people's homes without them knowing at all. And then people — other people that are involved in the conspiracy pick them up. Counsel, isn't the key fact here that her own statements indicated that she knew there were drugs in the packages? I think that she knew that there were drugs in the packages. She did say that. But she doesn't say when she learned that. Right? She never establishes when she knew that. Right? And so she receives like three packages. Right? But she doesn't say like, oh, I knew that at the time, like that when I received the packages, there were drugs in them. She says that I figured that out. Right? But not that she did anything in furtherance to the conspiracy when she figured that out. And that's really a problem here. You mean you think the evidence might only show that she learned about the drugs after she'd taken the ax? That's how I interpreted it, Your Honor. And that's — oh, sorry. I don't mean to cut you off. So then the question is whether a jury reasonably could infer circumstantially that she really knew earlier. Right. And that kind of goes into our next issue, which is that her prior bad acts had been introduced in this trial. And this was a very close trial of what she knew and when she knew it. Right? So when you look at that circumstantial evidence, but like what did she know? When did she know it? Like an innocent person can be delivered one of these packages, which we know from Inspector Brandt's testimony, that prior bad acts evidence is going to be very, very influential on the jury in terms of just saying, oh, she did in the past, she must have did it now. That's the reason why that prior — And what exactly came in? That she had previously been investigated for a prior methamphetamine conspiracy, basically. But, I mean, what was the specific evidence that came in? Well, they had the investigation. They found methamphetamine on her after a search that she had made prior wire transfers in another case. It was very damning evidence. About how many years before? It was from — I'm sorry. I'm trying to remember when we tried this. How close in time was it to that? I don't remember. Sorry. Eight years, Your Honor. They were talking about the acts that occurred in 2013, and this was tried in 2021. Tried in 21, but — Yeah. Committed in 2019 to 2020. Yeah. All right. So — So your point is that why doesn't that come in properly to show knowledge? I don't think that it doesn't show knowledge in this case. All it really shows is propensity, right? If the issue had been, like, oh, Ms. Arias doesn't know what a drug is, she doesn't know what a methamphetamine is, maybe that shows knowledge, right? But this, all it can be is propensity. The only way that it comes in is, oh, well, she did before, so she's obviously doing it again now. There's no other, you know, knowledge thing that I can think of or that the government's offered when this evidence was offered. Well, I suppose the government would say she's claiming she didn't know what was in the packages. Or she's claiming she didn't know what the money was for. Mm-hmm. The fact that she's familiar with how this sort of operation works would support an inference that she did really know. Yeah. Would that be proper under 404B, or is that propensity? I think that's propensity evidence, Your Honor. I think that just shows, like, well, she's done it before, and she's just going to do it again now. I mean, we're not — maybe some knowledge of how a conspiracy works, but in this case, I think it's far more prejudicial than probative, given that really what the case was all about was knowledge and what they had there. The other issue that I want to speak about in this case was Ms. Arias' sentencing. Now — It's really — well, go ahead. Yeah. I mean, a lot of this has a flavor of you saying, why did you charge mom? And if you did charge mom, why did she get more time than the daughter? Sure. Yeah. Absolutely. She received a full 12 months more than the daughter, right, despite being less culpable, based off of what the evidence was. Being less culpable — I mean, the major difference that you could say between her is that she had this prior contact with law enforcement, but then the other — but then the only other distinction I would say between her and Karen Camacho would be — What would you say this prior contact with law enforcement — did she have a criminal history? Yeah. Yeah. That's what you mean by prior contact with law enforcement? Yes, sir. She had been convicted previously of a drug trafficking crime? I don't know if she had been convicted of a drug trafficking crime, but she certainly had been investigated for drug trafficking crime, and maybe — What was her criminal history? She had this prior assault conviction, I believe. Okay. Well, I don't know how that would have — the prior drug activity didn't affect the sentencing then? It definitely did, and the court said that it did, right, because they knew that she had had these prior bad acts and that she had been involved in this prior drug. No, she did have a conviction. I'm sorry, Your Honor. She did have a conviction that was a prior drug trafficking. So that definitely did come into the sentencing, and the court mentioned that. Well, then why was the sentence unreasonable? Well, because really she was less culpable in this specific conspiracy than Karen Camacho, right? Karen Camacho brought her into this, right? And she received a whole year more than she did. It was that, that prior history, and then the prior — I'm sorry, the lack of acceptance of responsibility that really, the court said, was the issue here in this case. That she had not accepted responsibility because she insisted on taking the case to trial. That's another issue, of course, that we had with it. Ms. Arias qualified for the safety valve. She gave a full rundown of all of her activities for law enforcement. But the government says it's true, and she was convicted based upon her statements. Then she obviously accepted responsibility when speaking to Inspector Brandt. The case law that says that you can't have acceptance of responsibility if you take the case to trial is, I think, incorrect based upon just what the guidelines say. The commentary says differently. The guidelines just say acceptance of responsibility. Well, this is a bunch of different ways to show that people could accept responsibility. Counsel, that was one reason for the difference in the sentences, wasn't it? That was, yes. The daughter accepted responsibility, and the appellant here didn't. That's correct. My argument was that Ms. Arias has accepted responsibility. You can see it in her colloquy. You can see it in how she cooperated with law enforcement in her safety valve interview. You can see it in them. Also, the court said that this prior drug trafficking was so similar to the facts of this case that it warranted consideration as far as in sentencing, right? That's correct. The court did say that. Okay. Yeah. First of all, I think that a year more than her, given that she's less culpable in this conspiracy, and that she did accept responsibility, was unreasonable. Just that one factor of the different criminal history was not enough. But as I was saying, that acceptance of responsibility should have been given to Ms. Arias. 3.1.1 has a different section for if you timely enter a plea and you save the government resources, right? I think that's a different thing that the court needs to look at and say is different and distinct from accepting responsibility. You can still exercise your right to a jury trial, right, which you have the right to in the Constitution, and still accept responsibility for the crime. And that can be based on a variety of factors. That extra point plus one, as I believe, should be reserved for just people that time they enter a guilty plea and save the prosecution resources. If the court has any questions, I think I'm going to reserve the rest of my time. Very well. Thank you for your argument. Ms. Perez, we'll hear from you. Good morning, and may it please the Court. My name is Alexa Perez, and I'm here on behalf of the government. I would like to focus on two issues that were raised by Mr. Smith, and that is the sufficiency of the evidence and the Rule 404b issues. The first question is whether the government presented sufficient evidence to support the guilty verdict. In viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences in support of the verdict, the answer to that question is yes. At trial, the government presented evidence showing that the defendant knew that drugs were being delivered to her apartment and that she wired drug proceeds back to the source of supply in California after those packages were delivered to her apartment. Notably, the government presented evidence, as Mr. Smith pointed out, of Ms. Arias' own statements. In those statements, Ms. Arias admitted, for example, that she knew that packages were being sent to her house and that those packages contained controlled substances. She also admitted that she knew that TEMO, a.k.a. Carlos Padilla, sent those packages, and she admitted to wiring money to California at the direction of Karen Camacho. But that's not the only evidence that the government presented at trial. The government also presented sufficient evidence corroborating those statements. They presented evidence of the October 2019 intercepted package that contained methamphetamine. They presented evidence that that package was, in fact, sent by Carlos Padilla, and that, as confirmed by video and fingerprint evidence. The government also presented evidence of other profiled packages that were sent to Ms. Arias' apartment, and evidence demonstrating that after those packages were sent, Ms. Arias and Ms. Karen Camacho sent thousands of dollars back to California. Counsel, none of those backs seem to go to the timing of her knowledge. So is that just an inference? Yes, Your Honor, and I think Judge Carlton really summarized that. Well, I said the question would be whether there was sufficient evidence to support the inference, but you should probably address whether there was and what would support it. Sure, and I can address that now. Of course, Ms. Arias points out that during her postmortem, she didn't say exactly when she knew the packages contained controlled substances. And although she didn't give an exact time and date, drawing the inferences in favor of the guilty verdict, together with the other evidence that was presented at trial, I think an inference can be drawn that she knew during the period of the conspiracy that those packages contained controlled substances. What circumstances lead to that inference? Well, Your Honor, she, during her postmortem, indicated that she knew that the packages contained weed. And during that, during those statements, she also indicated that she knew, for example, she told Karen Camacho to stop engaging in the conspiracy. And I think together those statements with the other evidence presented at trial indicates that she knew during the period of the conspiracy that the packages both contained controlled substances and that the wire transfers that she was sending to California were, in fact, drug proceeds. Go ahead. Ms. Arias also makes much of the fact that there was no video evidence of her sending wire transfers. But Ms. Arias herself, again, during her statements, admitted to sending wire transfers to California at the direction of Karen Camacho. And even if there was a question of whether it was truly Ms. Arias or somebody else, as Ms. Arias suggested in her brief of somebody using her ID, the question of whether it was truly Ms. Arias must be resolved in favor of the verdict. Ultimately, there was sufficient evidence here to support a guilty verdict. Moving on to the 404B issues. The court has broad discretion to admit evidence at trial, and the court did not abuse its discretion when it admitted evidence of Ms. Arias' prior dealings with distribution quantities of methamphetamine. Well, the real issue is why isn't that propensity evidence? How is it really permissible under 404B? Sure. So it is settled in this circuit that a prior conviction for distribution of drugs and even the possession of user quantities of drugs is relevant to show both knowledge and intent in the charge of a conspiracy. And in this case, the evidence of Ms. Arias' possession of distribution quantities of methamphetamine goes to her knowledge. And that evidence included, for example, a 2013 traffic stop in which law enforcement found half a pound of methamphetamine hidden in a glove compartment box void. It also, during that incident, Ms. Arias admitted to knowing that there was methamphetamine in that vehicle. After that traffic stop, law enforcement searched her apartment and they found in her bedroom wire transfer receipts that matched the names that were in her roommate's, a drug ledger found in her roommate's bedroom. The 404B evidence also included a 2014 incident in which a CI met with Ms. Arias to pay $5,000 for a drug debt. And during that meeting, Ms. Arias agreed to provide the CI a pound of methamphetamine. Shortly after that meeting, law enforcement conducted a traffic stop on Ms. Arias and found one pound of methamphetamine. That evidence together shows that Ms. Arias has knowledge of the drug trade business. It shows that she understands the tools of that trade. And that's relevant to show in this case that Ms. Arias had knowledge that those packages that were sent to her house contained controlled substances. And also relevant to show that she knew that the wire transfers being sent to California at the direction of Karen Camacho were drug proceeds. Counsel, there was some evidence about a person by the name of Philpot who apparently purchased methamphetamine from Ms. Arias' daughter. What's the relevance of that and does it bear on this knowledge question? Yes, Your Honor. So Ms. Breanne Philpot was a cooperating defendant and she testified that she was directly involved in this conspiracy. She also testified that she, as part of that conspiracy, received drug packages from Carlos Padilla and that she picked up those drug packages from Karen Camacho at Ms. Arias' apartment. Ms. Philpot also testified that she wired money back to California to the source of supply. And that evidence together I think also shows, again, that this conspiracy existed and that Ms. Arias was aware, based on the totality of the evidence, that there was drugs in the packages being sent to her apartment. What exactly did Philpot say about Arias? So she didn't identify Ms. Arias. She identified that she would go to Ms. Arias' apartment and she identified the apartment complex as the location that she would go and receive these drug packages. She also identified Karen Camacho as the individual who would present those packages to her. So she didn't have any interaction with Arias. She dealt with Camacho at the Arias apartment? That's correct. But one question, is this correct, that one question that the government had to prove was that Ms. Arias, as she engaged in the conspiracy, knew that methamphetamine was the controlled substance that was being transported and paid for? Is that correct? With respect to the knowledge element, the government had to prove that Ms. Arias knew that there was controlled substances in the packages. And she admitted during her post-Miranda interview with the U.S. Postal Inspector that she knew that there was weed in there because Karen Camacho told her so. So regardless of whether Ms. Arias knew that it was weed or methamphetamine, she knew that there was controlled substances in those packages. And together with... Wasn't methamphetamine an element, though, because it has a higher penalty than marijuana? For purposes of the knowledge element, my understanding is she had to know that the purpose of the conspiracy was to distribute controlled substances. Well, but I thought she was convicted of a conspiracy to distribute methamphetamine, which would have a higher penalty, wouldn't it, than a conspiracy to distribute marijuana? And I was thinking, therefore, that the government would have to prove that she knew it was methamphetamine. Because if they only proved she knew it was marijuana, then she couldn't have been convicted of a crime that carried these higher penalties. Is that wrong? Do you understand? I understand the question. And I think... And I guess the follow-up question would be, you didn't answer the first one, but if it is correct that they would have to prove knowledge of methamphetamine, was there sufficient evidence of that as opposed to just sufficient evidence that she knew there might have been marijuana in there? So, as to the first question, the government, I think, proved that she knew that there was controlled substances in those packages. That's based on her statements. And together with the remaining evidence, I think that shows that she knew that there was, in fact, methamphetamine, given the remaining evidence that was presented, given the 404B evidence as well. That together supports an inference that she knew that there was, in fact, methamphetamine in the packages. I don't know if I interrupted, Judge Shepard, what you were trying to get at. Right. That was the point that I was interested in. I mean, I think that's been covered and, you know, it just leaves the question of whether there was a lot of evidence from which you could infer knowledge of controlled substance trade. I just wonder if there was some clinching evidence that would show knowledge that what was being transported was methamphetamine. But if you think you've answered sufficiently, that's fine. It's a circumstantial case, apparently, on knowledge of meth. There's no admission by her that she knew it was methamphetamine. That's correct, Your Honor. And no testimony from a conspirator about Arias dealing with methamphetamine. Your testimony, right, as we discussed testimony from Ms. Philpott regarding the methamphetamine conspiracy generally and the fact that those packages were being sent to her apartment. To close on the 404B evidence issue, even if the district court erred in allowing that evidence, such error would not constitute a basis for reversal. Given the strength of the government's evidence in this case, the district court's error, if any, was harmless. The last piece I want to cover is with regards to the sentencing issue about the reasonableness of Ms. Arias' sentence. I want to just clarify one thing, and that is that Ms. Arias did, in fact, have one criminal history point, and that criminal history point was from a 2013 conviction. But, of course, we also know, based on the 404B evidence, that she had prior dealings with methamphetamine. Ms. Arias argues, of course, that the sentence was unreasonable because it created unwarranted sentencing disparities between her and Karen Camacho. But that argument fails for two reasons. The first is that the directive to avoid unwarranted sentencing disparities in 3556A6 refers to national disparities and not to differences among co-conspirators. Second, even if there were any disparity between Ms. Arias and Karen Camacho, that disparity was not unwarranted. Ms. Arias and Karen Camacho were not similarly situated. As I indicated, Ms. Arias had one criminal history point, and she went to trial. Ms. Camacho accepted responsibility and had absolutely no criminal history. She did not have not even any interactions with law enforcement. It's not an abuse of discretion to impose disparate sentences on co-defendants where there are legitimate distinctions between them. Unless the Court has any further questions, the government relies on its brief and respectfully requests that this Court affirm the conviction and the sentence in this case. Robertson, I want to go back to Judge Shepard's question and your harmless error argument. It seems to me that without the 404B evidence, you wouldn't be able to have a reasonable inference of her knowledge of meth. So how could it be harmless error? Well, Your Honor, I think there's other evidence that supports, other circumstantial evidence certainly, that supports that she knew that there was methamphetamine in these packages. And that evidence is both the testimony from Ms. Bree and Phil Pott that discusses the fact that this was a methamphetamine conspiracy and that these packages were being delivered to her house. How much money was involved in these wire transfers? It was thousands of dollars, Your Honor. If I could just take a moment to look, I can give you a more accurate assessment of . . . Well, we can look it up in the record. And that is Government Exhibit 24. How would the 404B evidence show knowledge of the type of drug? When you answered before, you said it showed her knowledge of how it conspiracy works. I believe that's what you said, how a drug trafficking operation works. But is the 404B evidence admissible to show that she knew that the packages contained meth rather than marijuana? I think it shows that she knew the way a drug conspiracy works, Your Honor. And that is both in terms of the way that packages are concealed, the fact that to obtain additional drugs in a conspiracy, you have to send money transfers back to the source of supply. Otherwise, there is no drugs. And that was, I think, clearly indicated throughout the trial of evidence of that. And so I think that that shows that she knew that there was, in fact, a drug conspiracy, and she entered into this conspiracy. Okay. Thank you for your argument. Thank you. Mr. Smith, we'll hear rebuttal. Thank you, Your Honor. I think it's important for the Court to distinguish between inference and suspicion or conjecture. So when we talk about Bran Philpott and how she's also involved in this and how she knows Karen Camacho, that's all suspicion, that's conjecture. We talk about how Ms. Arias said to her daughter, Karen Camacho, like, you can't be doing this, and we don't know when it happened. That also falls under suspicion or conjecture. This is not a question that was beyond the government's ability to ask, is to have the postal inspector ask Ms. Arias, okay, when did you learn this? Right? This is all evidence that the government could have presented but didn't, or could have gathered but didn't. Right? So just to say that Ms. Arias was involved in a prior conspiracy and that now it proves knowledge because of packaging or because it proves that she knew just how drug conspiracies work, that's really kind of what falls under suspicion, conjecture, and propensity. Like that she was responsible this time and that she knew what was happening this time because she knew how drug conspiracies work. And there's really no knowledge that when she was doing anything for this that she knew a drug conspiracy existed. She knows that she lives with her daughter. She knows her daughter receives a couple packages. You know, that's the sort of evidence that we're dealing with. And like what Postal Inspector Brent said, drug dealers can go and deliver these packages to people's houses. They can use the postal system to deliver these things to people's houses and then have someone else pick them up. Right? So this is a thing that could happen to anyone in this courtroom, right? Unless, you know, you live on a farm or an unreasonable place. But, you know, I live in a townhouse. People live right next to me. If someone wanted to, during the day while I was here, deliver something on my doorstep and then take it, that could happen to me. Right? That could happen to anyone. It could happen to innocent people. And so when we're talking about this knowledge, it's not something where like just, well, we find that very suspicious or we think, well, that could have been, that's what happened. Right? Like these are things that the government could have done. The government could have gone and gotten that video footage of Ms. Arias using that ID. Right? They could have actually gone and see if there was any eyewitnesses to that. They didn't do that. And so court shouldn't protect them now and say, well, we made some inferences. Right? And use the term inferences as a replacement for what there are, their suspicions or their conjectures in this case. I want to ask that the court reverse this case and remand it for dismissal. With those questions, I have no further questions. All right. Very well. Thank you for your argument. The case is submitted. The court will file a decision in due course. Thank you to both counsel. You are excused.